IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)

| | | |
|---|---|---|
| THE MEDICAL CENTER AT ELIZABETH PLACE, LLC, | : | CASE NO. 3:12-cv-00026 |
| | : | (Judge Timothy S. Black) |
| Plaintiff, | : | |
| | : | |
| v. | : | **STIPULATED ORDER** |
| | : | **GOVERNING PRODUCTION OF** |
| PREMIER HEALTH PARTNERS, et al. | : | **HARD COPY DOCUMENTS AND** |
| | : | **ELECTRONICALLY STORED** |
| Defendants. | : | **INFORMATION** |

Pursuant to Fed. R. Civ. P. 16 and 26, and in accordance with General Order No. 12-01 Dayton, Plaintiff The Medical Center at Elizabeth Place, LLC ("Plaintiff") and Defendants Premier Health Partners, MedAmerica Health Systems Corporation, Samaritan Health Partners, Catholic Health Initiatives, Atrium Health System, and UVMC ("Defendants," and together with Plaintiff, the "Parties") submit this Stipulated Order Governing Production of Hard Copy Documents and Electronically Stored Information ("Stipulated Order").

I.     **GENERAL PROVISIONS**

1.     This Stipulated Order on discovery and production of documents originating as paper ("hard copy documents") and electronically stored information ("ESI") shall govern various discovery issues in the above-captioned action (the "Action").

2.     This Stipulated Order does not determine the relevance, discoverability, confidentiality, authenticity or admissibility of any hard copy documents or ESI of the Parties, does not expand any record preservation requirements under the Federal Rules of Civil Procedure, and does not limit any protection provided by Fed. R. Civ. P. 26 or Fed. R. Civ. P. 37.

3.     This Stipulated Order does not waive any objections as to discoverability, confidentiality, authenticity or admissibility of hard copy documents or ESI in the Action, or any

objections raised by a Party in its written responses to specific discovery requests served in the Action.

        4.      Nothing in this Stipulated Order shall be interpreted to require the disclosure of any hard copy documents or ESI that a Party contends are protected from disclosure by the attorney-client privilege, work product doctrine or any other applicable privilege or protection.

        5.      For purposes of this Stipulated Order, "metadata" means (a) information embedded in a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file, and (b) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated. For purposes of this Stipulated Order, "native file" means ESI in the electronic format of the application in which such ESI is created, viewed or modified in the ordinary course of business.

        6.      This Stipulated Order shall not require the Parties to create or supply any information, metadata or otherwise, which is not maintained by the Parties in the usual course of business.

        7.      This Stipulated Order is subject to, and does not modify or supersede, the terms and conditions of any protective order agreed to between the Parties or entered in the Action.

II.          **PRODUCTION OF HARD COPY DOCUMENTS AND ESI**

        8.      Subject to the limitations in this Stipulated Order, on a rolling basis the Parties will produce responsive, non-privileged hard copy documents and ESI (regardless of its original format) as: black and white, single-page, group IV TIFF files imaged at (at least) 200 dpi. For documents that do not contain redactions, the Parties will produce an extracted text file

2

for each electronic document where text can be extracted, and an Optical Character Recognition

("OCR") text file for (a) each imaged paper document and (b) each electronic document for

which text cannot be extracted. For documents that contain redactions, the Parties will provide

an OCR text file for the unredacted portions of such documents. Said extracted text and OCR

files shall be produced as document level text files and be named consistently with their

corresponding TIFF files (Example000000001.tif and Example000000001.txt). The Parties shall

also provide load files linking the TIFFs with their associated text file in order for the documents

to be loadable into document management software. The following types of load files should be

included with each production: (a) Concordance metadata .TXT files using standard delimiters

(one file with a "Full Text" field and one file without); (b) Concordance image load files – .LFP

and .OPT; and (c) Concordance text load file – .LST.

        9.     The load files will contain the following metadata in a searchable fielded

data file for each document that is produced, to the extent such metadata exists and is reasonably

accessible:

        a)     Beginning/ending Bates Numbers

        b)     Beginning/ending attachment ranges

        c)     Document Type

        d)     Sent Date/Time

        e)     Author/From

        f)     Recipient

        g)     CC

        h)     BCC

        i)     Subject/Title

        j)     Custodian

k)     All Custodians (all custodians for which the document also exists in the producing Party's collection)

l)     Attachment Count

m)     File Name

n)     Last Modified Date/Time

o)     *Full Text (re-OCR'd text if redactions were made)

p)     MD5/SHA Hash

q)     Received Date/Time

r)     Original Location Path

s)     Email Folder Path

t)     Page Count

u)     NativeFileLink

* If redacted electronic documents are produced, some of the metadata may be removed from the data load file and from the "Full Text" field.

10.     Attachments, enclosures, and exhibits to any parent document should be produced and proximately linked to the respective parent document (and vice-versa).

11.     Electronic documents will be produced in native file format only if necessary for the accurate portrayal of the document's ordinarily viewable or printable content, including, for example, Microsoft Excel spreadsheets (.xsl, .xlsx, .xlsm, and .xlsb files). Documents produced in native file format shall be produced together with a placeholder TIFF image and a file path to the native file.

12.     Certain types of files, such as system, program, and sound files, may not be amenable to conversion into TIFF format. Those files will not be converted into TIFF format but, if required to be produced, will be represented in the form of a placeholder TIFF image and

4

produced in a reasonably usable form by agreement of the Parties. Examples of such file types that are not conducive to conversion into TIFF image include: *.mov *.mp3 *.exe *.wav *.dwg.

III.        **PROCESSING AND LOGGING OF PRIVILEGED DOCUMENTS**

13.    If a Party determines that a parent document will be withheld as privileged, the Party shall make a separate determination regarding whether to produce, redact, or withhold each of its attachments, enclosures, and exhibits as privileged. If a Party determines that only an attachment, enclosure, or exhibit to a parent document is privileged, the attachment, enclosure, or exhibit shall be redacted and then produced in redacted form with the parent document.

14.    If a Party redacts as privileged any portion of a document to be produced, the redacted page shall include the word "REDACTED" or "PRIVILEGED" burned on the image of the document at the location of the redaction(s), and the redacted portion(s) need not be produced with OCR text.

15.    The Parties shall create logs of the responsive documents that they withhold from production or redact on grounds of attorney-client privilege, the attorney work product doctrine or any other claim of privilege (the "privilege logs"). (Pursuant to paragraph 21 of the entered Stipulated Protective Order, "redactions must be logged in a privilege log or redaction log and must remove only the part(s) of a document that are claimed to be privileged or protected from disclosure.")

16.    The Parties' privilege logs shall contain the following fields: (a) Date (sent or indicated on the document); (b) Document Type (e.g., memorandum, letter, email, email with attachments); (c) Document Author (should indicate any attorney(s) with an *); (d) Document Recipients (should indicate any attorney(s) with an *); (e) Title of Document; (f) Nature of

5

Document (subject matter of document); (g) Privilege Claimed; (h) cross reference to the specific request to which each assertion of privilege pertains (per LR 26.1(b)).

17. If a privileged document falls into one of the following categories, then the document does not need to be referenced in a privilege log: (a) communications solely between members of an in-house legal team acting solely in a legal capacity; (b) if applicable, communications sent to or from (including documents authored by) a Party's outside counsel in this case, subsequent to the filing of the initial complaint (i.e., January 30, 2012), that were not directly or indirectly furnished to any third party; (c) if applicable, communications seeking or reflecting legal advice from a Party's outside counsel in this case, subsequent to the filing of the initial complaint (i.e., January 30, 2012) that were not directly or indirectly furnished to any third party; (d) all except the top-most email in an email chain where the below emails are also privileged (in other words, no separate entry is necessary for each email in the chain; however, the privilege log should indicate that the document is a chain and the Nature of Document field should provide information for the entire chain); (e) attachment(s), enclosure(s), or exhibit(s) to a privileged document that are also privileged (in other words, no separate entry is necessary for each attachment(s), enclosure(s), or exhibit(s); however, the privilege log should indicate that the document contains attachment(s), enclosure(s), or exhibit(s) and the Nature of Document field should provide information for them).

18. In accordance with LR 26.1(b), privilege logs shall be sorted in chronological order.

## IV.      REDACTION ON GROUNDS OF PATIENT CONFIDENTIALITY

19. The Parties agree that they are not interested in invoking HIPAA regulations, notice requirements, or obtaining information on individual patients.

6

20. The Parties may redact patient names and other information that would identify a patient (e.g., patient name, initials, social security numbers, drivers' license numbers). The Parties may also replace patient identification numbers with a generic number assigned to each patient. The redactions mentioned in this paragraph are not required to be logged, but each page or significant component that contains the redacted information must be marked with a "REDACTED" stamp.

## V.       DE-DUPLICATION OF DOCUMENTS

21. Prior to production, the Parties may de-duplicate e-mails and other ESI designated for production either (a) by custodian, or (b) globally, if the ESI processing product used captures all of the custodians that contain a duplicate. Upon request for specific duplicate documents, the Parties agree to provide a report identifying duplicate copies of the documents that were filtered through the de-duplication process and requested metadata for the duplicate copies (to the extent such metadata exists and would be provided in the metadata load files referenced above).

## VI.      SCANNING OF HARD COPY DOCUMENTS

22. Subject to the limitations contained in this Stipulated Order, the Parties will scan responsive, non-privileged hard copy documents for review and production at a resolution of at least 200 dpi. The Parties will provide multi-page optical character recognition ("OCR") text files for all hard copy documents that are scanned for review or production. The total number of hard copy documents provided for review or produced by a Party should match the total number of OCR text files.

23. In creating the scanned images of the hard copy documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., hard copy documents should be logically unitized). The Parties shall

7

make their best efforts to have their Service Providers logically unitize documents correctly and commit to address situations of improperly unitized documents.

VII.     **PRODUCTION OF DOCUMENTS CONTAINING COLOR**

24.     Documents containing color need not be produced in color; however, if color is necessary to understand the meaning or content of the document, the producing Party shall produce either the original document for inspection and copying or a color image of the document.

VIII.    **THIRD-PARTY SOFTWARE AND DECRYPTION OF FILES**

25.     To the extent that ESI produced pursuant to this Stipulated Order cannot be rendered or viewed without the use of proprietary third-party software, the Parties shall cooperate and seek to attempt to minimize any expense or burden associated with production of such data. The Parties shall meet and confer to address such issues as may arise with respect to obtaining access to any such software and operating manuals which are the property of a third-party.

26.     The Parties shall make reasonable efforts to ensure that all ESI that they produce is decrypted.

IX.      **PRODUCTION FORMAT OF TIFFS AND PRODUCTION MEDIA**

27.     Each page of a produced document in TIFF format shall have a legible, unique Bates Number electronically "burned" onto the image at a location that does not obliterate, conceal or interfere with any information from the source document (preferably in the lower right-hand corner of the image).

28.     The Bates Number for each page of each document shall be created so as to identify the producing Party or Parties by using a unique prefix (e.g., MCEP 0000001).

8

29.     If a document is produced subject to a claim that it is protected from disclosure pursuant to the Stipulated Protective Order and Approved Confidentiality Agreement entered December 28, 2012 (Doc. # 43), the confidential terms designated by the protective order (e.g., "Confidential" or "Highly Confidential – Outside Counsel's Eyes Only") shall also be "burned" onto the image at a location that does not obliterate, conceal or interfere with any information from the source document (preferably in the bottom-middle of the image).

30.     The producing Party will produce documents that are to be produced in TIFF format (along with the corresponding load files) on readily-accessible, computer or electronic media, including CD-ROM, DVD, or external hard drive (with standard PC compatible interface) (the "Production Media"), based upon the amount of data to be produced and the receiving Party's preference.  The producing Party may also make such documents available via secure FTP site.

31.     Each piece of Production Media shall be assigned a unique volume number.  The identifying label on the Production Media shall contain its volume number, the date of the production of documents on the Production Media, the Bates Number range in that production (if applicable), and text referencing the case name and case number.

32.     Any replacement Production Media shall cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the Bates Number range that is being replaced.

33.     The Production Media shall be maintained only at the office(s) of the Parties' outside counsel or the office of the Parties' respective e-discovery vendors.  No copies of the Production Media shall be made except for the copy or copies loaded onto the servers of either the Parties' outside counsel or the Parties' e-discovery vendors for use in the Action.

9

X.      <u>**LIMITATIONS ON DISCOVERY – PRODUCTION**</u>

34.    No Party shall be required to re-produce any documents produced or exchanged prior to the date of this Stipulated Order, including materials submitted prior to commencement of the instant lawsuit, or to backfill any information associated with such documents.

35.    A Party producing data in electronic format need not produce the same document in paper format.

XI.     <u>**MODIFICATION OF STIPULATED ORDER**</u>

36.    This Stipulated Order may be modified for good cause.  The Parties shall jointly submit any proposed modifications. If the Parties cannot resolve their disagreements regarding those modifications, the Parties shall submit their competing proposals and a summary of their dispute to the Court for resolution.

\* \* \*

37.    The Parties may execute this document in counterpart and by facsimile or other electronic means of transmission.

Dated:  May 23, 2013

STIPULATED TO AND AGREED BY:

  s/ Richard A. Ripley by s/Charles J. Faruki
per email authorization
Richard A. Ripley (pro hac vice)
  Trial Attorney
James R. Wade (pro hac vice)
Nora L. Whitehead (pro hac vice)
HAYNES AND BOONE, LLP
1615 L Street, NW, Suite 800
Washington, D.C. 20036-5610
Telephone: (202) 654-4500
Facsimile: (202) 654-4245
Email: richard.ripley@haynesboone.com
        jimwade@haynesboone.com
        nora.whitehead@haynesboone.com

James A. Dyer (0006824)
Toby K. Henderson (0071378)
SEBALY, SHILLITO & DYER
A Legal Professional Association
40 N. Main Street
1900 Kettering Tower
Dayton, OH 45423-1013

Attorneys for Plaintiff The Medical
Center at Elizabeth Place, LLC

  s/ Charles J. Faruki
Charles J. Faruki (0010417)
  Trial Attorney
Laura A. Sanom (0039451)
Peter T. Snow (0088837)
FARUKI IRELAND & COX P.L.L.
500 Courthouse Plaza S.W.
10 N. Ludlow St.
Dayton, OH 45402
Telephone: (937) 227-3705
Facsimile: (937) 227-3717
Email: cfaruki@ficlaw.com
        lsanom@ficlaw.com
        psnow@ficlaw.com

Thomas Demitrack (0025266)
Robert E. Haffke (0082451)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
E-mail: tdemitrack@jonesday.com
        rhaffke@jonesday.com

Toby G. Singer (admitted pro hac vice)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
E-mail: tgsinger@jonesday.com

Attorneys for Defendants Premier Health
Partners, MedAmerica Health Systems
Corporation, Atrium Health System, Catholic
Health Initiatives, Samaritan Health Partners,
and UVMC

IT IS SO ORDERED.

_____
United States District Court Judge